Mr. Metlitsky, am I pronouncing that right? You are. Thank you, Your Honor. Okay, so Mr. Metlitsky, you have reserved three minutes for rebuttal, so that gives you seven minutes out of the gate. Thank you, Your Honor. Your Honor, may it please the Court, Anton Metlitsky for Klarna. So it's undisputed that the plaintiff repeatedly used web interfaces to purchase goods with Klarna, that is, to purchase goods that Klarna financed by allowing plaintiff to buy now but pay over several interest-free installments. It's also undisputed that Klarna's contract terms, which were repeatedly presented to the plaintiff, included an arbitration provision that would govern this dispute. So the question here is whether any of the three Klarna web interfaces at issue would have put a reasonable consumer on notice that she was agreeing to Klarna's service and payment terms. And the answer to that question turns on two basic inquiries. The first is whether any of Klarna's three interfaces conspicuously presented the fact that the terms and conditions apply and that those terms could be viewed by clicking. That's right. Yeah, exactly. So that's the first point. The best of the three. The best of the three? The best of the three. Well, I think all three are pretty good, but the second one, I would say, is sort of unanswerable in my view. So that one looks just like, that's the checkout widget. This is on A62 of the appendix, and it's on page 10 of our opening brief. This is the one that says review your plan at the top, right? And then it tells you what the payments are. Then it says, I agree to the payment terms. Payment terms are in black font and underlined, as opposed to the rest of the sentence, making clear that that was a hyperlink. And right below that, it says confirm and continue. So what are you confirming when you click confirm? You're confirming I agree to the payment terms. And I think the plaintiff has two responses to that one. The first is that payment terms isn't blue, and so you don't know it's a hyperlink. But a hyperlink doesn't have to be blue. It just has to be set off from the remainder of the sentence to make you know that it's a hyperlink. It's something different than just a regular word. And in fact, I can't imagine what somebody would think black font underlined in a sentence that is otherwise gray would be other than a hyperlink. And then the next argument is, well, it doesn't say by clicking confirm, I confirm that I agree to the payment terms. But the reason it doesn't say that is because the word you're clicking on is confirm. Confirm is already a word of assent. So that's different, for example, than the Uber case, where the word you were clicking on was register, which is not itself a word of assent. So the sentence had to instruct you that by creating a user account, you're agreeing to the terms. But here, you're already clicking the word confirm. And so what are you confirming when you click confirm? Certainly, you're confirming the sentence right above the word confirm, which is I agree to the payment terms. But you know, you asked me to pick one. So I picked that one. Okay. Then what do you do with the argument that payment terms would refer simply to what's being paid, the amount that's being paid, as opposed to a provision that requires arbitration? Is an arbitration clause something beyond payment terms? Well, so I think the conceit of this doctrine, Your Honor, and since you've written all the cases, you would know better than I do, but I think the point is that if the fact that there are terms is conspicuously presented, and the fact that there is hyperlink is clear, which I think it's clear here, then it's the customer's responsibility to click on the terms. Right? And you mentioned an arbitration provision. But of course, this isn't about an arbitration provision. Arbitration provisions are treated the same way as any other term. And so the question is, would a reasonable consumer understand that there were other terms that apply other than just the amount that you're going to pay? And especially in the context of a financing relationship that is an ongoing, going forward relationship, I think a reasonable consumer would certainly understand that when there are payment terms, or terms generally, it's not just how much you're going to pay. Like, for example, what if you return the good, right, before all the payments are made? Well, the payment terms tell you that CARNA has to pay you the money back. But- So are you saying that because the word payment terms is underlined, that makes it clear that it's a hyperlink? Underlined and in a different color font than the rest of the sentence? Yeah, that's just like, for example- You know, there's a clear to who, clear to who? People of different ages, you know, people who are under 50 or under 60, maybe it's clear to them. People who are older don't necessarily know that something underlined and in a different font means that by clicking on it, you go into a whole new world. Well, that may be true. I don't know whether that's true or not, Your Honor, but the cases make clear, and Meyer in particular makes clear, that the reasonable person you're thinking about is a reasonable person who knows about Internet commerce and has done it before and generally understands it. And I think the fact that words are in a different font and underlined, or in a different color font and underlined, is a clear signal that there's a hyperlink there. What else would it be? It's not in a different font from, I agree to that. A different color, I'm sorry, it's a different color. So it's black font and underlined as opposed to the gray. And what else could that be other than a hyperlink? And basically the same analysis applies to the first interface, the one you see right before this one, right? That one, similarly, once you click on Klarna as your payment option, you're told that by continuing, I accept the terms. The terms are bolded in black font and underlined. And she hit pay with Klarna. And her argument there is, I think other than the point about the blue hyperlink, her argument there is it says by continuing rather than by clicking pay with Klarna. But a reasonable person would understand that the only way you continue is by clicking pay with Klarna. So again, Judge Solomon, you asked me to pick one, so I picked one. But I think both of those work, and so does the third one. There's a distinction, they say, between sign in and log in. That's their argument on that one, and I think those two things mean the same thing. I see my time is almost up, and I'm happy to answer any other questions. But I think the case is pretty clear and very, very close to the Uber interface in Maya. Thank you. You'll have two minutes for rebuttal. We'll now hear from Ms. Davis-Stermitz. May I pronounce it? Yes, Your Honor. Thank you. Okay, you may proceed. Thank you. Good morning, Your Honors. Lynette Davis-Stermitz for the Appellee Nadja Edhenson. I'd like to start with the widget screen that my friend on the other side described as unanswerable for us. Now, you have to recall here that it's Klarna's burden in this case to show not only that its terms were clear and also that Klarna unambiguous, that those users, excuse me, unambiguously manifested their assent to the terms. And whatever else we can say about this screen, it manifestly fails to secure- I'm sorry, could you try and speak more directly into the microphone? Is it? Yes, I'm happy to, Your Honor. Is this any better? Yeah, that's better. All right, I'm sorry about that. Whatever else we can say about this widget screen that Klarna was talking about with you before, the screen fails to secure unambiguous assent because it fails the fundamental requirement that a user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking would constitute that assent. That's how the Ninth Circuit put the rule in Berman, but it's also how the court explained that rule in Meyer and Solomon as well. And so in the Meyer interface, Uber included clear and explicit text that expressly told users that if they created an account, that action would be construed as agreement to be bound by the linked terms. That rule is important because in its absence, the page creates an ambiguity. A user could click the register button simply because they wanted to register for an account and not because they also wanted to manifest their assent to the company's terms. But because on the Meyer interface, Uber carefully and explicitly told consumers that clicking the button would have these additional legal consequences, that ambiguity was gone. Now in this case, I think Klarna's argument is that its prompt is satisfactory because a reasonable user would understand that the phrase, I agree to the payment terms, is one of the things that they had to confirm. But the company has to show not just what it hypothesizes a reasonable user who knows that underlined font always is a hyperlink would think, but that what a user did on its page was unambiguous. And because of the particular wording that it selected in this page, it failed to do so. What could a reasonable consumer be thinking other than I am agreeing to these hyperlinked payment terms? Well, I think there's a couple of things they could be thinking. For one, they could be thinking what you pointed out before, Judge Chin, which is that they could think that payment terms describe the literal terms of payment that are listed on the page. And more broadly, Your Honor, I think you're- Is that reasonable? I mean, yes, that's a possibility. But given that we are talking about consumers with experience in Internet commerce, is that really a reasonable result? Well, two responses on that, Your Honor. First of all, what we're trying to say here is that this court doesn't have to puzzle over exactly what every reasonable user would have been able to figure out on the page. Because there's a second requirement that Klarna has to satisfy, which is to show that the consumer's assent was unambiguous. And I think it might be helpful here to look at the Berman decision from the Ninth Circuit, which confronted an almost indistinguishable version of this exact sort of text and button pairing. In the Berman case, there's a little bit of information in a box, and then there's a sentence that says, I understand and agree to the terms and conditions, which includes mandatory arbitration and privacy policy. And then it's followed by a button that says, this is correct, continue. Now, the Ninth Circuit explained that the user's clicking of that button, that this is correct, continue button, was ambiguous because the user might have been confirming everything else that was in the box. And that the only way that the company could overcome that problem was if the user was explicitly advised that the act of clicking would constitute that assent, as they were in the Meyer case. So that, your honors, is why we think that there's a very easy answer that this court can give on the second screen that doesn't even require this court to figure out what it would be reasonable that any particular consumer could figure out. But roughly the same logic takes care of the other pages as well. So if you look at the app page, for instance, the third page that Klarna relies on, on that page, Klarna failed to obtain unambiguous assent as well because it told its users how they would assent to its terms. It told them that they should click a button labeled sign in. But it didn't put a button labeled sign in anywhere on the screen. Maybe later on the flow there's such a screen, but they haven't shown there is, or that Ms. Edmondson never clicked on it. Or maybe there's some kind of typo here, but you don't ordinarily relieve companies of their drafting mistakes. Just the opposite. A company like Klarna has to provide clear and conspicuous notice of its terms, and it has to show that what a user did on its page was an unambiguous manifestation of assent. It certainly hasn't done that with the app screen. And turning finally to the first screen that Klarna relies on, this screen on the GameStop page, that page also has an unambiguous assent problem. Klarna's argument here... What page are you talking about? I'm sorry, Your Honor. I'm talking about the very first page, the page where Klarna has a little module embedded in the page operated by the GameStop company. So Klarna's argument on this page seems to be that users unambiguously manifest their assent when they press the Pay with Klarna button. But the page tells users exactly what the effect of clicking the Pay with Klarna button will be. It says in print, right above the button, selecting this option will open a Klarna modal. So instead, Klarna's tried to point you to this smaller font that's much fainter, that says, by continuing I accept, et cetera, et cetera. But there's some glaring problems with that text. Even if by continuing we're clear enough on its own, it isn't when there's this interrupting button that says that the button does something else. And the Seventh Circuit actually explained why in its Scoros decision, where it said, when a company explicitly says what clicking a button will do, and it's not binding a consumer to particular terms and conditions, then clicking the button isn't clear and unambiguous. Exactly the same logic applies here. You have arguments with respect to each of the three interfaces. What about, I mean, a consumer who uses Klarna has to do all three, correct? Not precisely, Your Honor. In order to pay with something on the GameStop page, they have to use the first and the second interface, and then at a separate later time they could use the app. But they're not all linked together. Well, if you take the first and second ones together, why aren't they enough to tell a reasonable consumer that they are agreeing to the hyperlinked terms? Well, they aren't enough for a couple of reasons. First of all, there's a problem that emerges from sort of relying on the language on the first page by the time you get to the second page, or the third, or whatever it is, the final page in the interface. And that's the problem that this Court has discussed in other cases, which is that the terms that the user is being proposed are not being proposed at the time that they're undertaking the act that would be assenting to them. So what Klarna is really asking users to do here is to keep in mind this tiny, faint font, the smallest font on the page, on a page that was operated by a different company by the time it gets to the payment terms page, where the company uses completely different words that, as Judge Chin pointed out earlier, may just simply refer to the terms that are already described on that page. And, Your Honors, even setting aside the unambiguous assent problems that emerge from this GameStop page, it also has very serious clarity and conspicuousness problems. If you actually look at the page, you'll see that it looks nothing like the page in Meijer. The text including the terms is the smallest and lightest font on the page. It's not next to the button, but it's interrupted by this larger advisement that says that the button does something else. And then there's distracting information all over the page. When you look at this page, Your Honors, you should be careful not to look at the page that Klarna includes in its argument section, in its opening brief, or in the reply brief, where the company carefully shears off most of the other information on the page. You should look at appendix page 36, or page 11 of our response brief, where we include the full interface, which shows that consumers who confront this tiny, faint text are also supposed to, on this page, shop among six different payment options, confirm all the details of their order, interact with a bunch of different promotional advertisements, and after all of that, try to parse the difference between the by-continuing phrase and the selecting this option page. These are exactly the sorts of deficits that courts have found undermine showings of clarity and conspicuousness. As the Ninth Circuit put it in Berman, users on the Internet are entitled to assume that important provisions, such as those that disclose the existence of proposed contractual terms, will be prominently disclosed to them, not buried in fine print. These sorts of features are why the page in Berman fell short, and in some ways, this one is even worse, because at least in the Berman interface, the user's attention is drawn directly to the box where the only action they can perform on the page occurs, whereas on this interface, the user has to make sure all the details of their transaction are right, they have to choose which payment option they want, and they have to parse these different competing advisements about the effect of picking the button. And the same sorts of features, too, are why the page that this court considered in Nicosia explained that all of this kind of conflicting information tempers whatever effect an advisement like Klarna's or an advisement like Amazon's in Nicosia could supply. Indeed, in some ways, the Nicosia page is even clearer, because at least the prompt that this court considered in the Nicosia case was placed directly under the header of the page, at least it highlighted the hyperlinks that a user was supposed to follow in bright blue bolded text, and at least it said explicitly which button a user would be clicking in order to manifest the assent to the terms. Klarna here uses much more vague language that it contradicts with other language on its screen. And it does all of that despite the fact that it would have been very easy for the company to satisfy these requirements, either by using a checkbox method where it decoupled the act of agreeing to the terms from the act of proceeding past the page and ensured that a user could actually see those terms, or by simply using the kind of interface that Uber employees admire. If there are no further questions, thank you. All right, thank you very much. We'll now hear from Mr. Medlitsky for three minutes of his own. Thank you, Your Honor. So my friend relied on the principle that these pages didn't put the plaintiff on notice or a reasonable person on notice that they were assenting by clicking, so I just wanted to go through the three and respond to that. So the first one, or not the first one, but the one that we're calling the checkout widget, the one on A62 and page 10 of our opening brief, that one is the one that says, I agree to the payment terms, and then there's a button below it that says confirm. I don't understand what a reasonable person would think they're confirming other than the line right above it, I agree to the payment terms. The reason it doesn't say by clicking confirm, I confirm that I agree, is because that's what confirm means. So that's one. Two is the GameStop interface. Now the first thing my friend says is that interface is confusing because there are a lot of different payment options. First of all, I would invite the court to look at that page and compare it to, for example, the page in the Amazon case, which was a total mess, it had like 25 different hyperlinks on it and the like, or the page in the Berman case, which is reprinted at page 12 of our reply brief and is similar. Here, the only hyperlinks on the page, as far as I can tell, are Klarna service terms. The other thing my friend says is that you should look at the whole page and not just what's under the Klarna box. That's fine if you want to do that, we think it suffices, but that's also incorrect. The way this works is when the person has decided they're going to buy something from GameStop, they're given six options. So the first option is you can pay with your credit card, the second is PayPal, et cetera, et cetera. It's only after you reject five of the other options, the other five options, and click on Klarna that you see the little Klarna box pop up. And all that box says is, first of all, here are your four payments, your interest-free payments. Then it says, by continuing, I accept Klarna service terms. Klarna service terms are hyperlinked. And then there's a sentence that says you're about to go to a Klarna page. So I don't see what is unclear about the instruction, by continuing, I accept the terms. How else would you continue other than by clicking on Pay with Klarna, which is what the plaintiff did. And finally, there's the app, which, again, the argument here is that it says by clicking Sign In, you approve the terms, whereas the button says Log In. And we're talking about a reasonable consumer that understands how Internet commerce works. I don't think anybody would think there's a difference between Sign In and Log In. There was a difference in the nomenclature in the Uber case, too, but this court found that that was not significant because a reasonable person would understand what is happening, which is true as to any of these three. And I think there's no dispute that even if one of the three provides proper notice, provides inquiry notice, then the arbitration provision applies. Thank you. All right. Well, thank you both. We will reserve decision. That concludes the argument calendar. We have two others on submission. We'll reserve on those for the time being as well. With that, let me ask Ms. Beard to adjourn court. Court is adjourned.